IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| WILLIS C. MCALLISTER,<br><br>Plaintiff,<br><br>v.<br><br>ANDREW L. PEPPER, ESQ., *et al.*,<br><br>Defendants. | Case No. 20-cv-00003-DKW-RT<br><br>**ORDER (1) GRANTING APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS; AND (2) DISMISSING ACTION WITHOUT LEAVE TO AMEND.**[1] |

On January 3, 2020, Plaintiff Willis McAllister, proceeding *pro se*, filed a civil complaint against eighteen individuals and corporations, Dkt. No. 1, along with an application to proceed *in forma pauperis* ("IFP Application"), Dkt. No. 2-1, and a motion requesting the Court to instruct the U.S. Marshal to execute service of process on Defendants. Dkt. No. 4. Because the IFP Application reflects that McAllister does not have the ability to pay the filing fee in this case, the Court GRANTS the IFP Application. However, because McAllister does not allege a claim in his complaint, and no amendment could possibly cure the defects identified below, the complaint is DISMISSED without leave to amend.[2]

---

[1]Pursuant to Local Rule 7.1(c), the Court finds these matters suitable for disposition without a hearing.

[2]The Court subjects each civil action commenced pursuant to 28 U.S.C. § 1915(a) to mandatory screening and can order the dismissal of any claims it finds "frivolous or malicious"; "fails to

**I.     The IFP Application**

Federal courts can authorize the commencement of any suit without prepayment of fees or security by a person who submits an affidavit that demonstrates an inability to pay. *See* 28 U.S.C. § 1915(a)(1). While Section 1915(a) does not require a litigant to demonstrate absolute destitution, *Adkins v. E.I. Du Pont de Nemours & Co.*, 335 U.S. 331, 339 (1948), the applicant must nonetheless show that he is "unable to pay such fees or give security therefor," 28 U.S.C. § 1915(a).

Here, McAllister has made the required showing under Section 1915(a). In the IFP Application, Dkt. No. 2-1, McAllister states that he is unemployed and the only monetary income he receives is $1,011 per month in social security benefits. Further, McAllister states that he has $53 in a checking or savings account, and owns no automobile, real property, or financial instruments. In light of these facts, McAllister's income falls below the poverty threshold identified by the Department of Health and Human Services' ("HHS") 2019 Poverty Guidelines,[3] and McAllister has insufficient assets to provide security. As a result, the Court GRANTS the IFP Application, Dkt. No. 2-1.

---

state a claim on which relief may be granted"; or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

[3]*See* HHS Poverty Guidelines, *available at* https://aspe.hhs.gov/poverty-guidelines.

**II.    Screening**

The standard for dismissal of a complaint that fails to state a claim is the same under 28 U.S.C. Section 1915(e)(2)(B)(ii) and Fed.R.Civ.P. 12(b)(6). *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998); *Jones v. Schwarzenegger*, 723 F. App'x 523, 524 (9th Cir. 2018); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (same standard under Section 1915A). The Court must take the allegations in the complaint as true, excluding those allegations that are merely conclusory, and if the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," the Court must dismiss the action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although the Court liberally construes a *pro se* Complaint, *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987), the Court cannot act as counsel for a *pro se* litigant, such as by supplying the essential elements of a claim. *Pliler v. Ford*, 542 U.S. 225, 231 (2004); *Ivey v. Bd. of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

McAllister's 110-page Complaint, Dkt. No. 1, is a repetitious diatribe of alleged grievances arising from the litigation in *McAllister v. Adecco Group N.A.*, No. 1:16-cv-00447-DKW-KJM [hereinafter *Adecco I*]. *See, e.g.*, Dkt. No. 1 at 5 ("This case stems from . . . Civil Case #1:16-cv-00447-JMS-KJM"). In *Adecco I*,

McAllister (proceeding *pro se*) filed an employment discrimination lawsuit against Adecco Group N.A., Adecco U.S.A., Inc., Garrett Mock, Curtis L. Brunk, Trane Supply Co., and Trane U.S.A., Inc. *See Adecco I*, No. 1:16-cv-00447 (D. Haw. Aug. 9, 2016), ECF Nos. 1, 117. Over time, McAllister's claims and various defendants were voluntarily dismissed or otherwise dismissed by the Court. *See id.* at ECF Nos. 43, 117, 126, 332. After over two years of litigation, the dispute ended when the Court granted summary judgment in favor of Adecco U.S.A., Inc., and Brunk. *Adecco I*, No. 1:16-cv-00447 (D. Haw. Nov. 21, 2018), ECF Nos. 396, 405.

In this lawsuit, McAllister named the following eighteen Defendants: Andrew L. Pepper (counsel for the Trane entities in *Adecco I*); Jackson Lewis, P.C. (the law firm that employed Pepper); the Jackson Lewis Board of Directors; Vincent A. Cino; Sarah O. Wang (counsel for the Adecco entities in *Adecco I*); Marr Jones Wang (MJW), LLLP (the law firm that employed Wang); Barry W. Marr (senior partner at MJW); Trane U.S.A., Inc.; Ingersoll Rand, Inc., N.A.; Ingersoll Rand, Inc., Ireland; Adecco Switzerland; Adecco Hawaii, Adecco Switzerland; the Adecco Board of Directors; Brunk; Chris Adams (supervisor at Adecco Hawaii); Joyce Russell (president at Adecco Group U.S.); and Alain Dehaze (chief executive officer at Adecco Group).

Once the Complaint, Dkt. No. 1, is stripped of its sprawling invective, the gist

of McAllister's lawsuit is that Defendants "conspired" and "refused" to arbitrate the claims in *Adecco I* "because of [McAllister's] race," and therefore Defendants breached the Arbitration Agreement, Dkt. No. 1-2, to which McAllister is a party and "purposefully and intentionally discriminated against [McAllister]" in the "enforcement of [the Arbitration Agreement] . . . on the basis of his race." *See, e.g.*, Dkt. No. 1 at 3, 29, 91–92, 101–02.[4] McAllister's theory is that Defendants "refused to disclose" the Arbitration Agreement, and had they done so, it "would have prevented years of unnecessary federal court litigation cost and time" and "hundreds of thousands of dollars . . . in legal fees from their clients." *Id.* at 3 (emphasis omitted). McAllister seeks $18 million in damages and purports to assert the following fourteen causes of action: (1) breach of contract; (2) violation of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16; (3) malpractice; (4) unjust enrichment; (5) tortious interference;[5] (6) negligent supervision; (7) negligent training;[6] (8) tortious interference;[7] (9) negligent supervision; (10) negligent training;[8] (11)–(13) violation of 42 U.S.C. Section 1981;[9] and (14) civil conspiracy

---

[4] McAllister is African-American. Dkt. No. 1 at 9.
[5] Count 5 is against Defendants Russell and Jackson Lewis.
[6] Counts 6 and 7 are against Defendants Cino, Jackson Lewis, Russell, Dehaze, Adecco N.A., Adecco Switzerland, the Adecco Board, and the Jackson Lewis Board.
[7] Count 8 is against Defendants Pepper, Wang, Brunk, and MJW.
[8] Counts 9 and 10 are against Marr, MJW, Brunk, Adams, and Adecco Hawaii.
[9] McAllister's Section 1981 claims for "contract enforcement," "retaliation," and "disparate treatment" in Counts 11, 12, and 13, respectively, are the same claim premised on substantially the same allegations McAllister recycles throughout the Complaint.

in violation of 42 U.S.C. Section 1985(1) and (2). The Court concludes McAllister has no claim under any principle of law.

The Arbitration Agreement Defendants allegedly breached is attached to McAllister's Complaint. Dkt. No. 1-2. The Agreement is "between Adecco U.S.A., Inc. it successors and assigns and its officers, directors, employees, affiliates, subsidiaries and parent companies (collectively referred to as the "Company"), and Willis C. McAllister." *Id.* at 1. In entering the Agreement, the parties agreed that, except for certain types of claims listed in the Agreement, "any and all disputes, claims or controversies" related to the "employment relationship between the parties . . . shall be resolved by binding arbitration." *Id.* The parties further agreed that the "Agreement shall be enforceable under and subject to the [FAA]." *Id.* Indeed, McAllister's Complaint relies heavily on the FAA. Dkt. No. 1 at 33, 38, 42. As such, the Court turns to the FAA.

"The overarching purpose of the FAA . . . is to ensure the enforcement of arbitration agreements according to their terms so as to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011); *see Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474 (1989). To that end, Section 2 of the FAA declares that a written agreement to arbitrate in any contract involving interstate commerce or a maritime transaction

"shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U. S. C. § 2. The FAA does not establish a freestanding federal cause of action. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 n.32 (1983); *United States v. Park Place Assocs.*, 563 F.3d 907, 918 (9th Cir. 2009). Rather, "[t]o enforce [Section 2], **any party 'aggrieved by the alleged failure, neglect, or refusal of another to arbitrate** under a written agreement for arbitration **may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement.**" *Van Dusen v. United States Dist. Court for the Dist. of Ariz.*, 654 F.3d 838, 842 (2011) (emphasis added) (quoting 9 U.S.C. § 4). Thus, at best, McAllister may compel arbitration, but he cannot assert a generic breach of contract claim. *See Park Place Assocs.*, 563 F.3d at 919 (noting that "[a]n action under the FAA" is simply "an action in contract to enforce the arbitration provision"); *see also Ling Wo Leong v. Kaiser Found. Hosp.*, 788 P.2d 164, 167 (Haw. 1990). Contrary to McAllister's theory, "[w]hen a party agrees to arbitrate disputes, and then breaches that agreement by filing a lawsuit, '[a]ny extra expense incurred as a result of the [plaintiffs'] deliberate choice of an improper forum, in contravention of their contract, cannot be charged to [the defendant]." *Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 943 (9th Cir. 2019) (brackets in

7

original) (quoting *Fisher v. A.G. Becker Paribas Inc.*, 791 F.2d 691, 698 (9th Cir. 1986)).

In any event, McAllister waived his right to enforce the arbitration provision. Although McAllister complains that Defendants never moved to compel arbitration in *Adecco I*, Dkt. No. 1, ¶ 1.14, neither did McAllister. "The right to arbitration, like any other contract right, can be waived." *United States v. Park Place Assocs.*, 563 F.3d 907, 921 (9th Cir. 2009). A party will be found to have waived that right if there is: "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Gutierrez v. Wells Fargo Bank*, 704 F.3d 712, 720–21 (9th Cir. 2012) (quoting *Fisher*, 791 F.2d at 694). Here, all three elements are satisfied.

First, McAllister had knowledge of his right to arbitration. Although McAllister avers that Defendants "intentional[ly] refused to provide [McAllister] with notice (or a copy)" of the Arbitration Agreement, which McAllister alleges he "did not even know, existed [*sic*], until [May 1, 2018]" when the Arbitration Agreement was "given to him by Attorney Sarah O. Wang, during his video-taped deposition," Dkt. No. 1, ¶¶ 1.2, 1.13, McAllister's bald assertion is belied by the Agreement itself. McAllister's electronic signature, dated December 24, 2014, is

8

at the bottom of the Arbitration Agreement along with a Bates Number from discovery. Dkt. 1-1 at 2. And after May 1, 2018—when McAllister allegedly first learned of the Arbitration Agreement—McAllister attached the Arbitration Agreement as an exhibit to his "Compiled Schedule of Adverse Employment Actions Taken Against Him," arguing, *inter alia*, that Defendants "breached the **Arbitration** agreement [*sic*]." *Adecco I*, No. 1:16-cv-00447, (D. Haw. Sept. 11, 2018), ECF Nos. 382, 382-4 (emphasis in original).[10] In light of these facts, McAllister had knowledge of his right to arbitrate his claims and yet he never moved to compel arbitration at any time before *Adecco I* was terminated in November 2018.

---

[10]The Court notes that McAllister appears to be attempting to circumvent the adverse final judgment against him in *Adecco I* by seeking a second bite at the apple with this lawsuit. Indeed, McAllister alleges that "[bringing this lawsuit, has made [McAllister], more energetic and bouncier, than a one-legged man, at [a] crowded, ass-kicking convention." Dkt. No. 1, ¶ 5.1. Under the doctrine of res judicata or claim preclusion, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *Turtle Island Restoration Network v. United States Dep't of State*, 673 F.3d 914, 918 (9th Cir. 2012) (listing the four factors considered in determining whether the "identity of the claims" is sufficient such that res judicata applies, the most important factor being "whether the two suits arise out of the same transactional nucleus of facts."). However, "[t]he rule in this circuit, and others, is that 'claim preclusion does not apply to claims that accrue after the filing of the operative complaint' in the first suit." *Media Rights Techs., Inc. v. Microsoft Corp.*, 922 F.3d 1014, 1021 (9th Cir. 2019) (quoting *Howard v. City of Coos Bay*, 871 F.3d 1032, 1039 (9th Cir. 2017)). Here, it is unclear whether the claims McAllister is asserting were "in existence" and could "have been sued upon"—*i.e.*, were "legally cognizable—when the allegedly preclusive action was initiated." *See Media Rights Techs., Inc.*, 922 F.3d at 1021. As a result, the Court cannot definitively conclude that McAllister's claims are barred by res judicata. For the reasons set forth in this Order, however, McAllister has no claim for relief.

Second, McAllister engaged in conduct inconsistent with his right to arbitrate. "[A] party acts inconsistently with exercising the right to arbitrate when it (1) makes an intentional decision not to move to compel arbitration and (2) actively litigates the merits of a case for a prolonged period of time in order to take advantage of being in court." *Newirth*, 931 F.3d at 941–42 (concluding defendant waived its right to arbitration when it filed a motion for arbitration, withdrew the motion, filed a motion to dismiss for failure to state a claim, and after receiving an adverse ruling on this motion, refiled its motion to compel arbitration); *Martin v. Yasuda*, 829 F.3d 1118, 1126 (9th Cir. 2016) (defendants waived right to arbitration when they "spent seventeen months litigating the case," including entering "a joint stipulation structuring the litigation, filing a motion to dismiss on a key merits issue, entering into a protective order, answering discovery, and preparing for and conducting a deposition."); *Van Ness Townhouses v. Mar Industries Corp.*, 862 F.2d 754, 759 (9th Cir. 1988) (finding that a "conscious decision to continue to seek judicial judgment on the merits of [an] arbitrable clai[m]" is inconsistent with a right to arbitrate); *see also Petroleum Pipe Ams. Corp. v. Jindal Saw, Ltd.*, 575 F.3d 476, 480 (5th Cir. 2009) ("A party waives arbitration by seeking a decision on the merits before attempting to arbitrate."); *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1067–68 (C.D. Cal. 2011) (finding waiver when the defendant actively

litigated the case by removing it to federal court, seeking a venue transfer, participating in meetings and scheduling conferences, negotiating and entering into a protective order, and participating in discovery that would not have been available under the arbitration agreement).

In *Adecco I*, McAllister initiated the lawsuit, sought default judgments against Defendants,[11] moved for discovery,[12] and otherwise engaged in two years of litigation and a full round of discovery in accordance with federal procedure. It was not until McAllister received an adverse final decision on the merits and judgment was entered, and nearly a year *after* McAllister appealed *Adecco I* to the Ninth Circuit Court of Appeals, that he then filed two motions to compel arbitration. *See McAllister v. Adecco USA, Inc.*, No. 18-17393 (9th Cir. Sept. 11, 2019), ECF Nos. 19, 25. On October 23, 2019, the Ninth Circuit summarily denied McAllister's motions, without any discussion. *See* No. 18-17393 (9th Cir. October 23, 2019), ECF Nos. 33. Based upon the totality of these circumstances, McAllister took actions inconsistent with his known right to arbitrate.

Third, Defendants would undoubtedly be prejudiced because, "should [*Adecco I*] go to arbitration, they would have to relitigate [numerous] key legal issue[s] on which the district court has ruled in their favor." *Martin*, 829 F.3d at

---

[11]*See Adecco I*, No. 1:16-cv-00447, (D. Haw. Sept. 30, 2016), ECF Nos. 19–22, 29, 39.
[12]*Adecco I*, No. 1:16-cv-00447, (D. Haw. Sept. 7, 2018), ECF No. 374.

1128 (collecting cases); *Kelly v. Pub. Util. Dist. No. 2*, 552 Fed. App'x 663, 664 (9th Cir. 2014) ("A party that is aware that it has a right to compel arbitration of a dispute cannot wait to exercise that right until the parties have expended a significant amount of time and money to litigate that dispute in federal court."); *see also Hoffman Constr. Co. of Or. v. Active Erectors & Installers, Inc.*, 969 F.2d 796, 799 (9th Cir. 1992). McAllister's belated attempt to rely on the Arbitration Agreement is unparalleled. *Martin*, 829 F.3d at 1127 (citing cases finding prejudice where the period of time parties had waited before compelling arbitration ranged from 8 to 18 months). *Adecco I* was litigated for over two years and ended in a final judgment on the merits in favor of Defendants. Defendants would clearly be prejudiced by any attempt to relitigate those claims through arbitration. As such, McAllister has waived his right to arbitration.

In sum, in *Adecco I,* McAllister opted not to pursue whatever rights he may have had through the Arbitration Agreement and, instead, knowingly persisted in litigating his claims until a final judgment was issued against him, thereby waiving his right to arbitration. Without any rights under the Arbitration Agreement that McAllister wishes to belatedly enforce, he "cannot state a claim under [42 U.S.C.] § 1981," *see Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476, 479 (2006), or any other legal principle, because all of his claims arise out of that agreement.

12

Because these defects cannot "possibly be cured by the allegation of other facts," *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*) (citation omitted); *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995), the Complaint is DISMISSED WITHOUT LEAVE TO AMEND. McAllister's motion to effectuate service of process, Dkt. No. 4, is therefore moot and denied on that basis.

### III. Conclusion

McAllister's application to proceed *in forma pauperis*, Dkt. No. 2-1, is GRANTED. McAllister's Complaint, Dkt. No. 1, is DISMISSED WITHOUT LEAVE TO AMEND, and McAllister's motion to effectuate service of process, Dkt. No. 4, is DENIED as moot.

The Clerk of Court is DIRECTED to close this case.

IT IS SO ORDERED.

Dated: January 10, 2020 at Honolulu, Hawai'i.



Derrick K. Watson
United States District Judge

---

*Willis C. McAllister v. Andrew L. Pepper, Esq., et al.*, Civil No. 1:20-cv-00003-DKW-RT; **ORDER GRANTING APPLICATION TO PROCEED WITHOUT PREPAYMENT OF FEES OR COSTS; AND (2) DISMISSING ACTION WITHOUT LEAVE TO AMEND**